FILED

Mar 27 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ melindajwilliams        DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTIRCT OF CALIFORNIA

-------------------------------------------------------------------------------

ROBERT E. CARTER,

               Plaintiff,

'23 CV0542 CAB BLM

v.

KAPPA ALPHA PSI FRATERNITY, INC., WESTERN
PROVINCE OF KAPPA ALHPA PSI FRATERNITY, INC.,
THE GRAND BOARD OF DIRECTORS OF KAPPA ALPHA PSI,
INC., SAN DIEGO ALUMNI CHAPTER OF KAPPA ALPHA
PSI FRATERNITY, INC., RUEBEN A. SHELTON, III in     **CLASS ACTION**
his official capacity as GRAND POLEMARCH; TIMOTHY
C. WOODS in his official capacity as WESTERN PROVINCE
POLEMARCH; and ROOSEVELT JOHNSON in his official
Capacity as POLEMARCH; and INFOMART,

               Defendants.          **JURY TRIAL DEMANDED**

-------------------------------------------------------------------------------

# COMPLAINT

**Introduction**.

     Federal law requires that any business or professional organization seeking to

conduct a background check on a prospective employee or member must comply

with the provisions of Fair Credit Reporting Act. ("FCRA") California state law

requires that any business, professional association, or user of information contained

in an investigative background report must strictly comply with the provisions of the

California Investigative Consumer Reporting Agencies Act. ("ICRAA") The

Defendants are a national fraternity with headquarters in Philadelphia, PA. Defendants charter collegiate and alumni chapters nationwide.

As part of its recruitment and initiation process, Defendants require an application to be completed, fees to be paid, and participation in an initiation ceremony. Plaintiff completed an application, paid the required fees, and participated in an initiation ceremony. Upon completion of the ceremony, Plaintiff became a member of the fraternity. After Plaintiff was indicted for alleged criminal behavior in the Western District of Wisconsin, Defendant's initiated an internal process to sanction and remove Plaintiff from membership in the fraternity even though Plaintiff has not yet been convicted of the alleged conduct. In seeking to sanction and remove Plaintiff, the Defendants violated the provisions of the FCRA and the ICRAA by claiming that the Plaintiff violated fraternity policy by committing conduct unbecoming of a member, specifically, that Plaintiff failed to disclose previous convictions.

The Defendants have deprived and seek to further deprive Plaintiff of benefits, rights, and privileges of membership based on violations of the FCRA and the ICRAA. Because the Defendants have implemented and continue to use an application which violates the provisions of the FCRA and the ICRAA in its membership recruitment process nationwide, a potential class exist for relief. Because the Defendants have implemented and continue to use an application which

2

violates the provisions of "ban the box" provisions in at least 36 states in its membership recruitment process nationwide, a potential class exist for relief.

Plaintiff seeks vindication of his benefits, rights, and privileges because deprivation of these benefits, rights and privileges violate both federal and state law. Plaintiff also seeks damages. As such Plaintiff and the class, if granted such status is entitled to relief.

## PARTIES

1. **Plaintiff, Robert E. Carter** ("Plaintiff") is a permanent resident of Wisconsin with an address of 923 S. Hastings Way, PMB 308, Eau Claire, WI 54701. Plaintiff is also a part-time resident of California as his business and foundation are California entities with an address of 402 W Broadway, Suite 400, San Diego, CA 92101.

2. **Defendant Kappa Alpha Psi Fraternity, Inc** ("KAY") is a social fraternity offering membership to African American men through collegiate and alumni chapters nationwide. The fraternity has its headquarters located at 2322-24 North Broad Street, Philadelphia, PA 19132-4590.

3. **Defendant Western Province of Kappa Alpha Psi Fraternity, Inc** ("WPKAY") is one of the 13 provinces of Kappa Alpha Psi Fraternity, Inc., and governs all chapter in the western states. The address for the Western Province is 1830 S. Villas Lane, Chandler, Arizona 85286.

4. **Defendant San Diego Alumni Chapter, Inc., of Kappa Alpha Psi Fraternity, Inc.,** ("SDAC") is a member of the Western Province located in San Diego, California. The address for the San Diego Alumni Chapter is P.O. Box 740822, San Diego, California 92174-0822.

5. **Defendant Grand Board of Directors of Kappa Alpha Psi Fraternity, Inc** ("GBKAY") is the governing Board of the fraternity and is responsible for the administration of the fraternity's policies and regulations. The Grand Board of Directors address is 2322-24 North Broad Street, Philadelphia, PA 19132-4590.

6. **Defendant Rueben A. Shelton, III** ("Mr. Shelton") serves as the Grand Polemarch of Kappa Alpha Psi Fraternity, Inc., and oversees the fraternity's operations. Rueben A. Shelton, III's address is 2322-24 North Broad Street, Philadelphia, PA 19132-4590.

7. **Defendant Timothy C. Woods** ("Mr. Woods") serves as the Province Polemarch of the Western Province of Kappa Alpha Psi Fraternity, Inc and oversees the chapters of several western states including California. Timothy C. Wood's address 1830 S. Villas Lane, Chandler, Arizona 85286

8. **Defendant Roosevelt Johnson** ("Mr. Johnson") serves as the Polemarch of the San Diego Alumni Chapter of Kappa Alpha Psi Fraternity, Inc. Roosevelt Johnson's address is P.O Box 740822, San Diego, California 92174-0822.

9. **Defendant Infomart** ("Infomart) is a consumer investigative report agency as that term is defined in the ICRAA and provides background screening services. Infomart's address is 1582 Terrell Mill Road, SE., Maietta, GA 30067-6048.

## <u>JURISDICTION</u>

10. The court has original jurisdiction to hear this matter based on federal question jurisdiction pursuant to 28 U.S.C. Section 1331.

11. Because this case involves additional state law claims, this court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. Section 1367 because they arise out of the same case or controversy.

12. Because this case involves an actual controversy over which this court has jurisdiction the court may grant declaratory relief pursuant to 28 U.S.C. Section 2201(a).

13. Because the parties are completely diverse and the amount in controversy exceeds $75,000 this court has jurisdiction pursuant to 28 U.S.C. Section 1332.

## VENUE

14. Venue is proper in this court pursuant to 28 U.S.C Section 1391.

## THE PLAINTIFF ALLEGES AS FOLLOWS:

15. On November 9, 2021, at 3:38 am Plaintiff sent an email to Dr. George Conley, Jr. ("Dr. Conley") expressing an interest in joining the San Diego Alumni Chapter of Kappa Alpa Psi Fraternity, Inc.

16. On November 9, 2021, at 8:27am Dr. Conley responded to Plaintiff's email informing that an "information meeting" would be held in January, that a "Spring line," would be held, requested a call from Plaintiff, and asked Plaintiff to provide contact information.

17. Dr. Conley served as the Chairman of the Membership Training Academy ("MTA") and he primary point of contact for prospective members.

18. On or about January 31, 2022, Plaintiff attended the information meeting held by the San Diego Alumni Chapter.

19. At this meeting prospective members were provided general information about the Fraternity, the membership application process, and the fees required for membership intake. Prospective members were permitted to ask questions about the process.

20. Regarding a question about criminal history on the membership application, Dr. Conley responded, ***"answer the question, if you answer yes, it doesn't mean that you won't be selected, there might be some follow up questions."***

21. At no time during the membership meeting did Dr. Conley inform the prospective members that they were not required to disclose any criminal conviction which antedated seven (7) years prior to the completion of the application.

22. At no time during the membership meeting did Dr. Conley inform the prospective members that California law did not require the disclosure of a conviction that antedated the application by seven years (7).

5

23. At no time during the membership meeting did Dr. Conley acknowledge or inform the prospective members that the current law in California at the time prospective members were completing the application banned the question of whether one has been convicted of a crime until after an offer of membership was made.

24. After completing the meeting, Plaintiff sought legal counsel about how to answer the conviction question on the membership application. Counsel advised that California was a "ban the box state" and that any reporting agency or user of background reports could not ask about previous convictions prior to an offer of employment or membership.

25. Counsel also advised that California had one of the more restrictive laws relating to the reporting of convictions and that any conviction that was more than seven years (7) old should not be reported by a reporting agency in California.

26. After receiving legal counsel, Plaintiff began to prepare the membership application by first ordering his college transcript from Morehouse College which was done on January 10, 2022.

27. On January 12, 2022, Morehouse College confirmed that it had processed a transcript request by Plaintiff to be sent to Kappa Alpha Psi Fraternity, Inc. (SAN DIEGO ALUMNI CHAPTER).

28. On January 31, 2022, at 9:01pm, Plaintiff received confirmation that he had completed creation of an account for the "Official Kappa Alpha Psi Fraternity, Inc., Membership Application and was provided with login credentials.

29. Plaintiff then proceeded to pay the $105.00 application fee and complete the membership application.

30. The application contained the following question: *"Have you ever been convicted of a felony?"*

31. Relying on the advice of counsel and California law at the time, Plaintiff answered the questioned by entering *"False"* as the response to the question. A designation as *"False"* indicates that there was no definitive answer provided to the question.

32. On February 2, 2022, Plaintiff received his first letter of recommendation for membership, a requirement to complete the membership application.

33. On February 5, 2022, Plaintiff received his second letter of recommendation for membership, a requirement to complete the membership application.

34. On February 6, 2022, Plaintiff received his third and final letter of recommendation for membership, a requirement to complete the membership application.

35. Additionally, on February 6, 2022, Plaintiff received notification that his application for membership was complete for membership into the San Diego Alumni Chapter of Kappa Alpha Psi Fraternity, Inc.

36. After submission of the completed application, Plaintiff immediately notified Dr. Conley, the MTA Chairman that Plaintiff had a legal name change occur in 2017. Plaintiff informed Dr. Conley that the transcript that would be received from Morehouse College would be in Plaintiff's birth name (Robert Earl McDonald).

37. Dr. Conley acknowledged this change and noted that he would pass the information along to IHQ. IHQ is the International Headquarters of Kappa Alpha Psi Fraternity, Inc.

38. On February 15, 2022, Plaintiff received a congratulatory email notification from SDAC that he had met the initial qualifications for being granted an interview to become a member in the SDAC.

39. Plaintiff was scheduled for an interview on February 18, 2022, between the hours of 7:20PM and 9:30PM.

40. Plaintiff logged into the membership application portal, accepted the interview time and confirmed that he would attend the in-person interview meeting.

41. In San Diego on February 18, 2022, Plaintiff attended the in-person interview where he was questioned by current members of the SDAC and responded to those questions accordingly.

42. Late in the evening on February 18, 2022, Plaintiff received a text message from Dr. Conley informally notifying Plaintiff that he had received enough votes to be accepted and initiated into the SDAC as a member of the chapter and of Kappa Alpha Psi Fraternity, Inc.

43. On February 19, 2022, Plaintiff received an official notification that his request and membership application had *"been reviewed and approved."* It notified Plaintiff of additional requirements still needing to be completed and also informed of the first date for Kappa Kore Curriculum Meetings.

44. Also, on February 19, 2022, Plaintiff paid the Membership Intake Payment in the amount of $3,590.00. The fee covered the Grand Chapter MTA Fee Alumni Membership Badge #1; Alumni Initiation Fee; Candidate Intake Fee; and the Standard Transaction Fee.

45. On February 20, 2022, Infomart, the consumer credit reporting agency selected by KAY received an order to procure, compile and complete a background check on Plaintiff that would include an investigative consumer report.

46. On February 21, 2022, at 1:43pm, Plaintiff received a phone call from Infomart regarding the background check for KAY.

47. Infomart is the company selected by KAY to conduct background checks on prospective members seeking to join KAY.

48. During the call, the Infomart representative advise that during the Social Security Number ("SSN") trace, Plaintiff's previous birth name was discovered, and Plaintiff was asked to provide approval for a trace run under the previous birth name.

49. Plaintiff was asked to confirm the previous name and Plaintiff was asked to verbally confirm that criminal history background checks should be done in all six (6) jurisdictions provided in his application.

50. Plaintiff verbally confirmed that Robert Earl McDonald was his birth name and that it matched the SSN trace done on his current legal name. Plaintiff verbally authorized criminal history checks under the name Robert Earl

McDonald in Georgia, New York, Texas, Wisconsin, California, and Puerto Rico.

51. At 2:06pm on February 21, 2022, Infomart emailed Plaintiff asking him to again confirm the birth name of Robert Earl McDonald; approving the criminal background checks in those jurisdictions and specifically asking for a signed release from the State of Georgia so that it could release information.

52. Also on February 21, 2022, Dr. Conley, the MTA Chairman emailed a copy of the KKC schedule for each meeting and the topic to be covered.

53. Kappa Kore Curriculum ("KKC") are the official training classes approved by GBKAY and WPKAY for completion by prospective members seeking to join KAY. KKC course began for Plaintiff on February 22, 2022.

54. On February 22, 2022, at 12:33am, Plaintiff responded to the Infomart email provided the full birth name of Robert Earl McDonald, authorizing a criminal background check in Georgia, signing a release of information form, and confirming that consent had been given for a background check for KAY.

55. Georgia was the only state that a full release authorizing a criminal background in Plaintiff's full birth name of Robert Earl McDonald was not received. All five of the other states conducted criminal background checks in both names of the Plaintiff.

56. On March 14, 2023, Infomart reported completed it background check, forwarded its findings to KAY, and determined that Plaintiff met the criteria proscribed by the client for passing the background check.

57. Plaintiff requested and received a copy of the confidential report sent to KAY.

58. The investigative consumer report on Plaintiff noted that the **Client** was KAY; the **Purpose** for the report was pre-employment; the **Order Date** was 2/20/2022; the **Reporting Date** and **Client Decision Date** both reflected 3/14/2022.

59. Plaintiff attended approximately 14 meetings and consumed a significant amount of information for KKC required coursework to complete the requirements for initiation into KAY.

60. Plaintiff completed approximately four (4) pre-test examinations on related KKC required coursework and was required to commit to memory specific and selected information regarding KAY and the SDAC.

61. At the end of the KKC coursework required to be completed, Plaintiff was required to take and pass an examination administered by KAY in electronic form. The examination contained 100 questions.

62. On or about April 4, 2022, Plaintiff completed the final examination given by KAY and received a passing score of 89% thus completing all the requirements for membership into KAY through the SDAC.

63. On April 6, 2022, Plaintiff participated in the ritual and initiation ceremony to become a full member of KAY and at approximately 6:56pm Plaintiff became a member of KAY and received all the benefits, rights, and privileges of such membership.

64. On October 20, 2022, the U.S. Attorney's Office in the Western District of Wisconsin announced an indictment of Plaintiff for violations of federal law.

65. After learning that the indictment had been announced through a press release by the government, Plaintiff contacted Mr. R. Johnson to request an opportunity to address the SDAC in an email on December 14, 2022.

66. On December 19, 2022, Mr. R. Johnson responded that he appreciated Plaintiff reaching out and that it "means a lot." Mr. R. Johnson stated that he believed that Plaintiff should have an opportunity to be heard. A date was to be set for Plaintiff to address the allegations.

67. Mr. R. Johnson never set the date for Plaintiff to address SDAC.

68. Instead, Mr. R. Johnson filed a complaint with the WPKAY against Plaintiff alleging that Plaintiff had engaged in conduct unbecoming a member.

69. Mr. R. Johnson files this complaint even though Plaintiff has not been found guilty of any of the charges brought by the government, indeed there is no trial date yet set and the complaint was premature.

70. Mr. Johnson never provided Plaintiff an opportunity to respond or comment on the charges he filed in his complaint with the WPKAY.

71. On January 28, 2023, Mr. Woods sent Plaintiff an email informing Plaintiff that Mr. R. Johnson had filed a complaint against the Plaintiff.

72. Mr. Woods attached a Cease-and-Desist letter to his email.

73. The Cease-and Desist letter directed Plaintiff to not represent himself as a member of KAY; not to use any of the emblems, insignias, and other representations of KAY; not to participate in any rituals; not attend any official functions of KAY and that he was placing Plaintiff in inactive status.

74. Mr. Woods informed that the two charges leveled against Plaintiff were (1) Falsification of Application because Plaintiff failed to disclose previous convictions and (2) Stealing Fraternity property by misappropriating funds of individual members.

75. Mr. Woods advised that an investigator would be assigned and would contact Plaintiff within seven (7) days.

76. An investigator did not contact Plaintiff within seven (7) as is required and as Mr. Woods had informed.

77. Over a month later, on March 1, 2023, Mr. Zachary Johnson ("Z. Johnson") contacted Plaintiff about the allegations in the complaint filed by Mr. R. Johnson and noticed by Mr. Woods.

78. On March 2, 2023, Mr. Z. Johnson conducted an interview with Plaintiff as part of his investigation into the allegations. Plaintiff spoke at length with Mr. Johnson regarding the allegations.

79. After the interview was completed, in an email on March 2, 2023, Plaintiff provided evidence of his background check to Mr. Z. Johnson. That email contained an attachment with the Infomart complete background check which found Plaintiff met the criteria for membership.

80. The email also included a response to Infomart in which Plaintiff provided his full birth name of Robert Earl McDonald and authorized in writing a separate criminal background check for the State of Georgia.

81. The Infomart report included Plaintiff's current legal name, SSN, DOB, and a criminal history check in six (6) jurisdictions authorized by Plaintiff in the application.

82. In an email on March 4, 2023, Mr. Z. Johnson responded that the Infomart report and the email appeared only to authorize a criminal history background check in the full birth name for the state of Georgia. He also requested the evidence that a conviction is not be reported after 7-years.

83. In a response email on the same date, Plaintiff explained that he had provided authorization to Infomart over the phone for the other jurisdictions who were authorized in the application and verbally approved the birth name search in the phone call because written consents had already been obtained for those jurisdictions.

84. Plaintiff also provided a copy of the California statutes in the email demonstrating that Plaintiff was not required to disclose convictions that were more than seven years old (7). Additional California law was provided to Mr. Z. Johnson in the email.

85. The specific provisions of California law provided to Mr. Z. Johnson were California Civil Code Article 2 Section 17.12(d)(1) and California Civil Code Section 1786.18 (7) and (8).

86. On March 8, 2023, Mr. Woods sent Plaintiff an email with the results of Mr. Z. Johnson's investigation.

87. Mr. Woods informed that Plaintiff was found to not have Stolen Property by misappropriating funds of individual members and that the charge was not proven. However, Mr. Woods informed that Mr. Z Johnson's investigation had determined that Plaintiff falsified his membership application by not disclosing the previous convictions.

88. Plaintiff had previously informed both Mr. Woods, Mr. R. Johnson and Mr. Z. Johnson that the finding that Plaintiff had falsified his membership application

was a violation of federal law and California state law and that such a finding could not be upheld.

89. On March 12, 2023, Plaintiff sent a letter to both Mr. Woods and Mr. Johnson proposing a settlement of the violation of the law regarding the failure to disclose convictions. Both failed to respond, and this lawsuit follows.

90. KAY certified to Infomart that its purpose for procuring an investigative consumer report on Plaintiff was pre-employment pursuant to Sections 1786.12(e); 1786.16(a)(4) and 1786.20(a).

91. Infomart procured an investigative consumer report on Plaintiff at the direction of KAY for pre-employment purposes as that term is defined in Section 1786.2(c) of the ICRAA and Section 1681(e) of the FCRA.

92. Infomart procured a consumer report on Plaintiff at the direction of KAY for pre-employment purposes as that term is defined in Section 1681(d)(1) of the FCRA.

93. KAY is a "person" as that term is defined by Section 1786.2(a) of the ICRAA and Section 1681(b) of FCRA.

94. KAY is a "user" of the investigative consumer report as that term is defined by Section 1786.50 of the ICRAA.

95. KAY deprived Plaintiff of his benefits, rights, and privileges of membership in violation of both federal and state law when it maintained a Cease-and-Desist order based on Plaintiff's failure to disclose previous convictions on the application for membership.

96. Plaintiff's previous convictions occurred 17 and 12 years respectively, prior to Plaintiff's completion of the membership application, thus under both federal and state law, Plaintiff had no legal or other obligation to disclose the previous convictions on the membership application.

97. Section 1786.18(a)(7) and (8) of the ICRAA and Section 1681(c)(a)(5) prevents a consumer reporting agency from procuring, preparing, or providing

record of conviction information in any report that antedates the report by more than seven (7) years from the date of disposition, release, or parole.

98. As a result of the provisions of the ICRAA Plaintiff's previous convictions were not disclosable on the KAY membership application under either Plaintiff's birth name or his legal name, thus KAY was not deprived of any opportunity to consider all relevant information prior to approving Plaintiff's membership application.

99. Because KAY certified to Infomart that its purpose for the investigative consumer report on Plaintiff was pre-employment, KAY is subject to the provisions of the ICRAA and its deprivation of Plaintiff's benefits, rights, and privileges of membership violate California state law.

100.    Because KAY certified to Infomart that its purpose for the investigative consumer report on Plaintiff was pre-employment, KAY is subject to the provisions of the FCRA and its deprivation of Plaintiff's benefits, rights, and privileges of membership violate Federal law.

101.    KAY's deprivation of Plaintiff's benefits, rights, and privileges of membership violate the California Fair Chance Act ("CFCA") which prevented KAY from asking Plaintiff about his previous conviction or criminal history record prior to an offer of membership.

102.    Because KAY certified to Infomart that the purpose for the investigative consumer report on Plaintiff was pre-employment, KAY is subject to the provisions of the CFCA and its deprivation of Plaintiff's benefits, rights, and privileges of membership violate California state law.

103.    KAY is currently violating "ban the box laws" in at least 46 states and at least 150 cities nationwide using its current membership application which asks prospective members whether they have been convicted of a crime (or felony).

104.    KAY, WPKAY, and SDAC and all other chapters nationwide are organized as non-profit organizations and is a "social" fraternity and its primary recruitment efforts are geared toward membership, not employment.

105.     Thus, when KAY certified to Infomart that its purpose for obtaining an investigative consumer report on Plaintiff was pre-employment, KAY knowingly and willingly misrepresented the true purpose of procuring the report.

106.     KAY's true purpose for procuring the investigative consumer report was for the purpose of determining Plaintiff's suitability for membership not employment.

107.     Because KAY's true purpose for procuring the investigative consumer report on Plaintiff was for membership and not pre-employment, KAY knowingly and willingly violated Section 1681(n)(a)(1)(B) of the FCRA because KAY obtained the investigative consumer report under false pretense.

108.     KAY conducts thousands of pre-employment background checks on prospective members including numerous college individuals who routinely provide KAY with permission to conduct such a background check without the knowledge that they are consenting to a background check for pre-employment purposes and not membership.

109.     In each case where KAY completes a background check under purposes for pre-employment and not membership, it is a violation of Section 1681(n)(a)(1)(B) of the FCRA which is occurring in at least 36 other states.

110.     Having obtained Plaintiff's investigative consumer report under false pretense pursuant to the FCRA by representing that the report was to be used for a pre-employment purpose, KAY caused Infomart to violate Section 1786.12 which only permits the use of Plaintiff's report for specific purposes, of which membership fitness in KAY or any association, fraternity or sorority is not listed.

111.     In each case where KAY obtained an investigative consumer report based on the false pretense pursuant to the FCRA by representing that the report was to be for a pre-employment purpose, KAY caused Infomart to violate several state law provisions in at least eight other states.

112.     By certifying to Infomart that its purpose for investigative consumer reports and consumer reports are for pre-employment purposes when in fact the true use of such reports is for membership fitness purposes, the KAY

defendants have engaged in and continue to engage in deceptive acts and practices in violation of Section 5 of the Federal Trade Commission Act. ("FTCA")

113.     The KAY defendants require payment of and collect membership initiation fees as well as on-going membership fees and dues from chapters in at least 46 states and territories and by collecting these fees and dues, the KAY defendants engage in and affect commerce.

114.     The KAY defendants have intentionally and willfully deprived Plaintiff of benefits, rights, and privileges of membership that they knew Plaintiff was entitled and for which Plaintiff should not have been deprived of based on violations of federal and state law statutory damages must be awarded pursuant to Section 1786.50(1).

115.     The KAY defendants have intentionally and willfully obtained Plaintiff's and other members and prospective members of the KAY defendants investigative consumer reports under false pretense in that it falsely claimed that the reports were for pre-employment purposes when the KAY defendants knew that it was for membership purposes and punitive damages must be awarded pursuant to Section 1786.50(b) of the ICRAA.

116.     Infomart failed to ensure that KAY's certification of it use of investigative consumer reports complied with the law and that those investigative consumer reports were being used for an authorized purpose.

117.     Infomart encouraged and participated in KAY's failure to comply with the provisions of both federal and state law by publishing and fashioning a background screening process that did not comply with federal and state law.

## NEED FOR DECLARATORY AND INJUNCTIVE RELIEF

118.     The Fraternity Defendants intentional and willful violation of the law has deprived Plaintiff of his benefits, rights, and privileges of membership and they have indicated an intention to continue violating the law by claiming that the fraternity internal review process is superior to a court's ability to enforce the federal and state laws against its blatant and continual violation of federal and state law. Thus, declaratory, and injunctive relief is necessary.

119.     The Fraternity Defendants do not believe that the ICRAA and the FCRA apply to its membership application or the process by which it procures and uses investigative consumer reports. Thus, its violation of the ICRAA and the FCRA will continue in perpetuity unless and until a court of competent jurisdiction makes a legal determination that the Fraternities must comply with the law. Thus, declaratory, and injunctive relief is necessary.

120.     Plaintiff lost his benefits, rights, and membership privileges months ago and is unable to take part in official fraternity business or participate in fraternity meetings or attend fraternity events or use fraternity emblems or insignia based on the Fraternity Defendants violation of law and the Fraternity Defendants do not intend nor will it restore Plaintiff's benefits, rights and privileges of membership unless and until a court of competent jurisdiction determines that the ICRAA and the FCRA apply to the Fraternity Defendants. Irreparable harm has been caused and will continue absent a declaration of applicability by the court. Thus, declaratory, and injunctive relief are necessary.

121.     The Fraternity Defendants continue to procure and use investigative consumer reports under false pretense, claiming that the purpose of such reports are used for pre-employment when in fact they are used for membership fitness purposes an impermissible basis under both federal and state law. The Fraternity Defendants will not stop violating the law unless and until a court of competent jurisdiction prevents it from doing so. Thus, declaratory, and injunctive relief are necessary.

122.     A money judgement will only compensate Plaintiff and the members of the class for past violations. It will not stop the Fraternity Defendants from violating the law and depriving Plaintiff or any other member of the class benefits, rights, and privileges of membership that the Fraternity Defendants can take away relying upon a violation of federal and state law. Thus, declaratory, and injunctive relief are necessary.

123.     Neither the Plaintiff nor any other member of the class has a practical or adequate remedy either administratively or at law to recover future losses. The Fraternity Defendants do not believe that the ICRAA and FCRA are applicable to their membership application process in procuring and using investigative consumer reports. The costs of pursuing such a claim far exceeds

17

the amount at issue here which is already substantial. Thus, declaratory, and injunctive relief are necessary.

124.     Given the thousands of members of the expected class in this case, it is a monumental undertaking that is not mounted on a regular basis. Where multiple lawsuits would be required to redress repeated statutory violations and other wrongs, there is no adequate remedy at law and the irreparable harm is not only present, but it will also continue.

## CLASS ALLEGATION

125.     Plaintiff brings this action on his own behalf and pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(2), and/or (b)(3), and USDC Southern District of California Local Rule 23.1(b) as a class action on behalf of a nationwide class of persons defined as:

**National Class:**     All existing and prospective members of any chapter of KAY in good standing who between the dates of January 1, 2013, thru the date of certification completed a membership application and authorized a background check for membership initiation into KAY. This class seeks certification for declaratory and injunctive relief, and for damages pursuant to 15 U.S.C. Section 1681(n)(a)(1)(B); Section 1681(n)(a)(2); and Section 1681(n)(a)(3).

**California subclass:**     All existing and prospective members of any chapter of KAY in good standing within the State of California who between the dates of January 1, 2013, thru the date of certification completed a membership application and authorized a background check for membership initiation into KAY. This class seeks certification for declaratory and injunctive relief, and for damages pursuant to 15 U.S.C. Section 1681(n)(a)(1)(B); Section 1681(n)(a)(2); and Section 1681(n)(a)(3); Section 1786.50 of the ICRAA; and Section 17500 of the Cal. Bus. Prof. Code.

## RULE 23(a)
### (Typicality)

126.     The named Plaintiff and the members of the class and subclass each and all have tangible and legally protectable interests at stake in this action.

127.     The claims of the named class representatives and the absent class and subclass members have a common origin and share a common basis.  Their claims originate from the same violations of federal and state law and deceptive acts and practices of the Fraternity Defendants, and the Fraternity Defendants act in the same way toward the Plaintiffs and the members of the class and subclass.  As such, the named Plaintiff has been the victim of one or more of the following acts: deprivation of benefits, rights and privileges of membership; violation of state and federal law statutes governing the reporting of prior convictions; fraudulent pretense for use of investigative consumer reports; and violation of "ban the box" laws -preventing an application from asking about previous convictions.

128.     The proposed class and subclass representatives state claims for which relief can be granted that are typical of the claims of absent class and subclass members.  If brought and prosecuted individually, the claims of each class and subclass member would necessarily require proof of the same material and substantive facts, rely upon same remedial theories, and seek the same

relief.

129.     The claims and remedial theories pursued by the named class representative is sufficiently aligned with the interests of absent class and subclass members to ensure that the universal claims of the class and subclass will be prosecuted with diligence and care by the Plaintiff as representative of the class and subclass.

## **Numerosity**

130.     The members of the class and subclass are so numerous that joinder of all members is impracticable.  The Fraternity Defendants recruit thousands of members for initiation into the fraternity and thus seeks to conduct and procure thousands of investigative consumer reports on members and prospective members.  The class and subclass are, however, ascertainable as the names and addresses of all class and subclass members can be identified in business records maintained by the Fraternity Defendants.

## **Commonality**

131.     The questions of law and fact common to the class and subclass include, *inter alia*.

a. Whether the ICRAA applies to the Fraternity Defendants when they represent that they are using investigative consumer reports for pre-employment purposes;

b.  Whether the FCRA applies to the Fraternity Defendants hen they represent that they are using investigative consumer reports for pre-employment purposes;

c.  Whether the provisions of the FTCA applies to the Fraternity Defendants when they misrepresent the purpose for using investigative consumer reports;

d.  Whether the Fraternity Defendants may deprive Plaintiff and the class of benefits, rights and privileges of membership when the basis for that deprivation violates federal and state law;

e.  Whether the Fraternity Defendants deprived Plaintiff of his benefits, rights and privileges in violation of federal and state law on the basis that Plaintiff failed to disclose previous conviction beyond the seven year threshold;

f.  Whether the Fraternity Defendants are required under California law and any other state law to amend the purpose that it uses investigative background reports;

g.  Whether the Fraternity Defendants falsely represented that it was using the investigative reports of Plaintiff and the class for a permissible purpose;

h.  Whether the Fraternity Defendants mislead the investigative

consumer reporting agency that it had truthfully certified the use of investigative consumer reports;

i. Whether Cal. Bus. Prof. Code Section 17508(a) applies to the Fraternity Defendants;

j. Whether Cal. Bus. Prof. Code Section 17500 applies to the Fraternity Defendants;

k. Whether Fraternity Defendants intentionally and willfully misrepresented their purpose and use of investigative consumer reports; and

l. Other questions to be presented.

### **Adequate Representation**

132.    The named Plaintiff is willing and prepared to serve the Court and proposed class and subclass in a representative capacity with all the obligations and duties material thereto.  The Plaintiff will fairly and adequately protect the interest of the class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the class.

133.    The self-interests of the named class representatives are co-extensive with and not antagonistic to those of the absent class members.  The proposed representatives will undertake to protect the interests of the absent class

members well and truly.

134.    The named Plaintiff will engage the services of competent counsel if the class certification is granted. Said counsel will be experienced in complex class litigation, will adequately prosecute this action, and will assert, protect, and otherwise well represent the named class representative and absent class members.

## RULE 23(b)(1)(A) AND (B)

135.    The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

136.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof, and legal theories, would also create and allow to exist inconsistent and incompatible rights within the plaintiff class.

## RULE 23(b)(2)

137.     The Defendants have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

## RULE 23(b)(3)(2)

138.     The questions of law and fact common to members of the class and subclass predominate over any questions affecting only individual members.

139.     A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

    (a)     Individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake.

    (b)     There has been no individual litigation filed regarding the controversies herein, and individual members of the class would see no advantage in prosecuting and controlling separate actions.

    (c)     It is desirable to concentrate litigation of the claims herein in this forum.

    (d)     The proposed class action is manageable.

## FIRST CAUSE OF ACTION
### (Declaratory & Injunctive Relief Against Fraternity Defendants)

140.     Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

141.    California passed the Investigative Consumer Reporting Agency Act which prevents consumer reporting agencies from including in any investigative consumer report *"records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years."* The California legislature made clear in passing the ICRRA that it did not want convictions that were older than seven years considered in pre-employment background checks.

142.    The Fraternity Defendants in hiring and retaining Infomart to conduct background checks certified to Infomart that the investigative consumer report that it would procure were for the purpose of pre-employment. Acting on this certification, Infomart procured and compiled an investigative consumer report on Plaintiff.

143.    Plaintiff completed a membership application for initiation into the Fraternity. The application included a question about Plaintiff's criminal history. Plaintiff answered the question *"false"* effectively declining to disclose his previous convictions because they were beyond the seven (7) year threshold.

144.    The investigative consumer report included a criminal background check which complied with the provisions of the ICRAA by not disclosing

any of Plaintiff's convictions under his legal name of Robert E. Carter or his birth name of Robert E. McDonald because the convictions under either name were beyond the seven (7) year threshold.

145.     Accordingly, Plaintiff is entitled to a declaration that the ICRRA applies to the Fraternity Defendant's membership application completed by Plaintiff and all other members and prospective members who completed the application in January of 2022 and who are required to complete the current version of the membership application. The Fraternity Defendants certified to Infomart that the investigative consumer reports obtained on Plaintiff and others was for a pre-employment purpose. As a result, neither Plaintiff nor any other prospective member was required to disclose a conviction beyond the seven (7) year threshold.

## SECOND CAUSE OF ACTION
### (Declaratory & Injunctive Relief Against Fraternity Defendants)

146.     Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

147.     California passed the Investigative Consumer Reporting Agency Act which prevents consumer reporting agencies from including in any investigative consumer report *"records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years."*

The California legislature made clear in passing the ICRRA that it did not want convictions that were older than seven years considered in pre-employment background checks.

148.    The Fraternity Defendants in hiring and retaining Infomart to conduct background checks certified to Infomart that the investigative consumer report that it would procure were for the purpose of pre-employment. Acting on this certification, Infomart procured and compiled an investigative consumer report on Plaintiff.

149.    Plaintiff completed a membership application for initiation into the Fraternity. The application included a question about criminal history and Plaintiff answered the question *"false"* effectively declining to disclose his previous convictions because they were beyond the seven (7) year threshold.

150.    The investigative consumer report included a criminal background check which complied with the provisions of the ICRAA by not disclosing any of Plaintiff's convictions under his legal name of Robert E. Carter or his birth name of Robert E. McDonald because the convictions under either name were beyond the seven (7) year threshold.

151.    Accordingly, Plaintiff is entitled to a declaration that the ICRAA applies to the Fraternity Defendants because they are "users" of the investigative consumer report that they obtained. Further that as applied to the Fraternity

Defendants, who certified to Infomart that the investigative consumer report was for a pre-employment purpose, the Fraternity Defendants are prevented by the ICRAA from depriving Plaintiff of the benefits, rights and privileges of membership based on Plaintiff's failure to disclose previous convictions that were far beyond the seven (7) year threshold.

### THIRD CAUSE OF ACTION
**(Declaratory & Injunctive Relief Against Fraternity Defendants)**

152.   Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

153.   California passed the Fair Chance Act which prevents companies from asking prospective employees about previous criminal history on applications and proscribing a process for when companies may inquire into a prospect's criminal history. The law also proscribes what companies must do if they intend to withdraw an offer of employment.

154.   The Fraternity Defendants employ five or more employees. On its membership application in 2022 and its current membership application, the Fraternity Defendants ask prospective members whether they have been convicted of a crime (or felony). The Fraternity Defendants certified to Infomart, that the purpose of its background check is pre-employment. They further certified that investigative consumer reports obtained on prospective members would be used for the purpose of pre-employment. Infomart has

provided the Fraternity Defendants with investigative consumer reports based on its certification that they would be used for pre-employment purposes.

155.    Infomart procured and compiled an investigative consumer report on Plaintiff and provided it to the Fraternity Defendants. Plaintiff received an exact copy of the investigative consumer report that was provided to the Fraternity Defendants. On that report, the Fraternity Defendants list pre-employment as their purpose for the report.

156.    Accordingly, Plaintiff is entitled to a declaration that the provisions of the California Fair Chance Act preventing Fraternity Defendants from asking about criminal history on its membership application prior to an offer of membership are applicable to the Fraternity Defendants because they certified to Infomart that investigative consumer reports are used for pre-employment purposes.

157.    Further, Plaintiff is entitled to a declaration that the membership application completed by Plaintiff which contained the question about criminal history violated the CFCA and the Fraternity Defendants are prevented from depriving the Plaintiff of benefits, rights, and privileges of membership.

## FOURTH CAUSE OF ACTION
### (Declaratory & Injunctive Relief Against Fraternity Defendants)

158.    Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

159.    The FCRA was passed by Congress to protect consumers from abuse and to create fairness in the process of obtaining and using consumer private information. The act specifically set forth restrictions and regulates behavior of users of investigative consumer reports and consumer reports.

160.    Under the provisions of the FCRA users of information contained in an investigative consumer report or a consumer report may not report adverse information, specifically applicable here, criminal history information if it antedates the report by more than seven (7) years.

161.    The Fraternity Defendants obtained an investigative consumer report on Plaintiff during a membership initiation process when Plaintiff completed a membership application and authorized the release of information for consideration to become a member of the Fraternity. The report did not contain any criminal history information beyond the seven (7) threshold and Plaintiff was found to meet the criteria of the Fraternity and became a member.

162.    The Fraternity Defendants have deprived Plaintiff of the benefits, rights and privileges secured through membership, claiming that Plaintiff failed to disclose previous convictions.

163.    Accordingly, Plaintiff is entitled to a declaration that the provisions of the FCRA apply to the Fraternity Defendants because they are users of information that they obtain from investigative consumer reports and consumer reports. Further that the Fraternity Defendants are subject to the FCRA because they have certified to Infomart that the purpose of their investigative consumer reports and consumer reports are for pre-employment purposes.

164.    Plaintiff is further entitled to a declaration that the Fraternity Defendants cannot deprive Plaintiff of the benefits, rights, and privileges of membership when the deprivation of the benefits, rights, and privileges are based on violation of the FCRA.

**FIFTH CAUSE OF ACTION**
**(Violation of FCRA Section 1681(c)(a)(5) & Injunctive**
**Relief - Against Fraternity Defendants)**

165.    Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

166.    The Fraternity Defendants violated the FCRA by depriving Plaintiff of the benefits, rights, and privileges of membership when it found that Plaintiff failed to disclose previous convictions. The convictions were more than seven (7) years old and Plaintiff had no obligation to disclose the convictions. The Fraternity Defendants violated and continue to violate the law.

## SIXTH CAUSE OF ACTION
### (Violation of FCRA Section 1681(n)(a)(1)(B) & Injunctive Relief– Against Fraternity Defendants)

167.    Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

168.    The Fraternity Defendants violated the FCRA by obtaining an investigative consumer report or a consumer report on Plaintiff under false pretense. Fraternity Defendants are required to certify the purpose for which it has requested and requests investigative consumer reports and consumer reports.

169.    Fraternity Defendants certified to Infomart, the agency retained by the Fraternity Defendants to procure and compile such reports that its purpose for the use of such reports was pre-employment.

170.    However, the Fraternity Defendants knew and should have known that they were falsely certifying the purpose for which they would be using the investigative consumer reports and the consumer reports. In fact, and truth, the Fraternity Defendants were using and continue to use the reports for evaluating the fitness of an individual to join the Fraternity.

171.    The Fraternity Defendants do not employ the prospective members of the Fraternity through the membership initiation process. And to certify to Infomart that the use of the reports would be for pre-employment is knowingly

a false pretense. The Fraternity Defendants violated and continue to violate the law.

### SEVENTH CAUSE OF ACTION
**(Violation of FTCA Section 5 Deceptive Acts and Practices Declaratory & Injunctive Relief -Against Fraternity Defendants)**

172.     Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

173.     Fraternity Defendants have engaged in and continue to engage in deceptive acts and practices by representing to Infomart, the provider of its investigative consumer reports and consumer reports that its purpose for such reports is pre-employment when in fact it is fraternity membership fitness.

174.     Fraternity Defendants are required to certify that they are using the reports for a permissible purpose as authorized by law pursuant to Section 1786.12 of the ICRAA. Fraternity Defendants have engaged in and continue to engage in deceptive acts and practices by providing a false and misleading certification that it uses procured reports for pre-employment purposes when in fact they are using the procured reports for fraternity membership fitness.

175.     Fraternity Defendants require the payment of membership initiation fees and other fraternity fees in relation to the procurement and use of investigative consumer reports and consumer reports. Fees are paid to the

Fraternity Defendants in 46 states and territories thus being used in and affecting commerce. The Fraternity Defendants are violating the law.

## EIGHTH CAUSE OF ACTION
### (Violation of Section 17500 of California Business and Profession Code-Against Fraternity Defendants)

176.    Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

177.    The California Business and Profession Code prevents false advertisement. The Fraternity Defendants actively engage in advertising fraternity membership and recruitment. As such, when conducting background checks on prospective members, the Fraternity Defendants are required to accurately disclose the purpose of the background check and use of investigative consumer reports and consumer reports that it procures and uses about prospective members.

178.    The Fraternity Defendants certified to Infomart that it uses the investigative consumer reports and consumer reports for the purpose of pre-employment. However, Fraternity Defendants in fact uses such reports for membership fitness, a purpose not authorized by Section 1786.12 of the ICRAA.

179.    Because the Fraternity Defendants fail to provide a disclosure to prospective members explaining the true purpose for use of the investigative

34

consumer reports and consumer reports, it has engaged in and continues to engage in false advertisement regarding the background check process for membership initiation.

### NINETH CAUSE OF ACTION
**(Violation of Section 17508(a) of California Business and Profession Code – Against Fraternity Defendants)**

180.     Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

181.     The California Business and Profession Code makes its an unlawful act to make any false or misleading advertising claim. The Fraternity Defendants actively engage in advertising fraternity membership and recruitment. As such, when conducting background checks on prospective members, the Fraternity Defendants are required to accurately disclose the purpose of the background check and use of investigative consumer reports and consumer reports that it procures and uses about prospective members.

182.     The Fraternity Defendants engaged in and continue to engage in making a false and misleading claim in the advertisement of recruitment for membership because it continues to represent that the investigative consumer reports and consumer reports that it procures and causes to be compiled by Infomart are for the purposes of pre-employment when in fact, they are not.

## TENTH CAUSE OF ACTION
### (Violation of Section 1786.18 (7) and (8) of the ICRAA, Injunctive Declaratory Relief – Against Fraternity Defendants)

183.    Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

184.    The Fraternity Defendants violated the ICRAA by depriving Plaintiff of the benefits, rights, and privileges of membership when it found that Plaintiff failed to disclose previous convictions. The convictions were more than seven (7) years old, and Plaintiff had no obligation to disclose the convictions. The Fraternity Defendants violated and continue to violate the law.

185.    The California legislature intended that Section 1786.18 (7) and (8) be strictly construed. Thus, the ICRAA is more restrictive than the FCRA. The Fraternity Defendants were expressly prevented from receiving and considering any previous conviction which antedated the membership application by more than seven (7) years where the Fraternity Defendants certified that the purpose of the investigative report obtained on Plaintiff was for pre-employment purposes.

186.    The previous convictions are "adverse information" and because they antedated the report by more than seven (7) years, the Fraternity Defendants

cannot use the previous convictions as a basis to deprive Plaintiff of the benefits, rights, and privileges of membership.

187.    Regardless of whether Plaintiff disclosed his previous birth name (although Plaintiff disclosed the birth name very early to the Fraternity Defendants and Infomart) the previous convictions were not disclosable nor reportable because they antedated the report by more than seven (7) years. Thus, Plaintiff was wrongfully deprived of the benefits, rights, and privileges of membership in clear and blatant violation of the law.

### ELEVENTH CAUSE OF ACTION
### (Violation of Section 1786.12 of the ICRAA, Declaratory & Injunctive Relief – All Defendants)

188.    Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

189.    The Fraternity Defendants violated Section 1786.12 of the ICRAA by procuring an investigative consumer report for an unauthorized purpose. The Fraternity Defendants used the investigative consumer report that it caused to be created, complied, and procured for the purpose of membership fitness, a purpose not authorized by this section.

190.    Infomart violated Section 1786.12 by compiling and providing to the Fraternity Defendants an investigative consumer report that was not for an authorized purpose under Section 1786.12. The Fraternity Defendants and

Infomart knew that the Fraternity Defendants were not using the investigative consumer report for pre-employment or employment purposes.

191.     Infomart knew or should have known based on its knowledge and expertise that the Fraternity Defendants were misrepresenting and falsely certifying the purpose of their use of the investigative consumer report because Infomart knew that the true purpose of the investigative consumer report was for membership fitness.

## TWELTH CAUSE OF ACTION
### (Violation of Section 1786.16(a)(4) of the ICRAA – Fraternity Defendants)

192.     Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

193.     The Fraternity Defendants failed to certify to Infomart that it had made the applicable disclosures to Plaintiff and that it would comply with subsection (b). In fact, the Fraternity Defendants made no disclosure to the Plaintiff at all in the form and substance that is required under the ICRAA.

## THIRTENTH CAUSE OF ACTION
### (Violation of Section 1786.20(a) of the ICRAA – All Defendants)

194.     Plaintiff repeats, alleges and realleges, verbatim, each numbered paragraph set forth above as set forth herein fully and at length.

195.     Infomart is required to have in place a procedure which reasonably assures that users of the investigative consumer reports that it procures, and

compiles are used only for the purposes authorized under the statute. Further, it is required to obtain certifications from the user that it is complying with the provisions of the statute.

196.    Infomart failed to ensure that the Fraternity Defendants complied with the provisions of the statute. Fraternity Defendants repeatedly violated the provision of the statute requiring that the investigative consumer reports be used for an authorized purpose pursuant to Section 1786.12.

197.    Infomart knew and should have known that Fraternity Defendants were violating the provisions of the statute because Infomart regularly deals with fraternities, sororities, and other professional associations for whom it procures and complies investigative consumer reports. Thus, Infomart knew and should have known that Fraternity Defendants were falsely certifying the purpose for which it was using and still uses investigative consumer reports.

198.    Infomart contributed to and caused the violation of the statute by continuing to procure and compile investigative consumer reports on behalf of the Fraternity Defendants for the purpose of pre-employment when both knew that the purpose was for membership fitness.

199.    Indeed, Infomart created and disseminated a blog on its website entitled "Background Screening for Greek Organizations" by its CEO Tammy Cohen in July of 2021. In the article, Infomart compared fraternities and sororities to

businesses and promoted the running of pre-employment background checks with the knowledge and understanding that these organizations are non-profit social organizations and do not employee prospective members in the membership initiation process.

200.    Infomart also understood that it could tailor a background check for the specific needs of a fraternity or sorority and therefore its violation of the statute is knowing and willful.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, the National Class and the California class pray for the following relief:

## AS TO CAUSES OF ACTION ONE, TWO, THREE, FOUR AND FIVE:

A declaration that the applicable provision of law applies to the Fraternity Defendants and that they are barred from depriving Plaintiff, members of the National Class and members of the California class of their benefits, rights, and privileges of membership when the deprivation of rights is based on a violation of federal and state law. Injunctive relief preventing the Fraternity Defendants from further depriving Plaintiff, members of the National class and members of the California class of benefits, rights, and privileges to which they are entitled based on a violation of federal and state law. Injunctive relief

directing the Fraternity Defendants to restore to Plaintiff any benefits, rights, and privileges afforded by membership if a favorable declaration is issued. An award of monetary damages as prescribed by statute to the Plaintiff, National class, and California class.

**AS TO THE SIXTH CAUSE OF ACTION:**

An award of monetary damages as prescribed by statute to the Plaintiff, National class, and the California class. Injunctive relief directing the Fraternity Defendants to stop using a false pretense to obtain investigative consumer reports on the members of the National class and the California class and to take immediate corrective action to accurately certify the purpose that the Fraternity Defendants uses investigative consumer reports when engaging in membership recruitment and initiation, which purpose is membership fitness, not pre-employment.

**AS TO THE SEVENTH CAUSE OF ACTION:**

A declaration that the provision of law applies to the Fraternity Defendants. Injunctive relief preventing the Fraternity Defendants from continuing to violate the provisions of the statute and directing the Fraternity Defendant to immediately take any action necessary to prevent further violation of said provision.

**AS TO THE EIGHTH AND NINETH CAUSES OF ACTION:**

An award of monetary damages as prescribed by statute to Plaintiff, National class, and the California class. Injunctive relief preventing the Fraternity Defendants from further violating the statues.

**AS TO THE TENTH CAUSE OF ACTION:**

A declaration that the statue applies to the Fraternity Defendants because they certified that their purpose for Plaintiff's investigative consumer report was for pre-employment purposes at the time Plaintiff completed the membership application and authorized the background check. Further, a declaration that the Fraternity Defendants cannot deprive Plaintiff of benefits, rights, and privileges of membership when the basis of such deprivation violates the statute. Injunctive relief directing the Fraternity Defendants to reinstate Plaintiff's benefits, rights, and privileges based on a failure to disclose convictions that were not disclosable as they were beyond the seven (7) year threshold and preventing the Fraternity Defendants from further violating the statute by directing the Fraternity Defendants to amend or create a membership application that complies with the statute. An award of money damages as prescribed by statute to Plaintiff, National class, and the California class.

**AS TO THE TWELTH CAUSE OF ACTION:**

An award of money damages as prescribed by the statute to Plaintiff, National class, and the California class.

**AS TO THE ELEVENTH AND THIRTEENTH CAUSES OF ACTION:**

A declaration that the statutes apply to the Fraternity Defendants because they certified to Infomart that the purpose of obtaining investigative consumer reports was for pre-employment. Injunctive relief preventing the Fraternity Defendants from further violating the statues and directing the Fraternity Defendants to provide a truthful and accurate certification to Infomart that the investigative consumer reports is not for pre-employment purposes because the Fraternity Defendants do not and are not hiring prospective members as employees. An award of money damages to Plaintiff, National class and the California class as prescribed by statute.

**AS TO ALL CAUSES OF ACTION:**

Plaintiff, National class, and the California class further prays for an award of punitive damages, court costs, and an attorney's fees as proscribed by statute where applicable and any such other relief as the court may deem just and proper.

Respectfully submitted,


*Robert E. Carter*
Robert E. Carter
Plaintiff & Class Representative
923 S. Hastings Way, PMB 308
Eau Claire, WI 54701
715-514-2857
robert.e.carter@outlook.com

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFIY, that on March 23, 2023, a true copy of the forgoing was served upon the following individuals via electronic mail and hard copy:

Kappa Alpha Psi Fraternity, Inc.
ATTN: Cleophus Thomas, Jr.
2322-24 North Broad Street
Philadelphia, PA 19132-4590
Kappa Alpha Psi Fraternity, Inc.

Grand Board of Directors
ATTN: Cleophus Thomas, Jr.
2322-24 North Broad Street
Philadelphia, PA 19132-4590

Mr. Reuben A. Shelton, III
Grand Polemarch
2322-24 North Broad Street
Philadelphia, PA 19132-4590

Kappa Alpha Psi Fraternity, Inc.
Western Province
ATTN: Timothy C. Woods
1830 S. Villas Lane
Chandler, AZ 85286

Mr. Timothy C. Woods
Province Polemarch
1830 S. Villas Lane
Chandler, AZ 85286

Kappa Alpha Psi Fraternity, Inc.
San Diego Alumni Chapter
ATTN: Roosevelt Johnson
P.O. Box 740822
San Diego, CA 92174-0288

Mr. Roosevelt Johnson
Polemarch

Infomart, Inc
ATTN: General Counsel
1582 Terrell Mill Road, SE
Marietta, GA 30067-897

P.O. Box 740822
San Diego, CA 92174-0288

*Robert E. Carter*
Robert E. Carter